**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| David A. Warner, *et al.*, | : | Case No. 3:07 CV 0397 |
| Plaintiffs, | : | |
| vs. | : | |
| Wood County Sheriff's Department, *et al.*, | : | **MEMORANDUM DECISION AND ORDER** |
| Defendants. | : | |

The parties have consented to have the undersigned Magistrate enter judgment in this civil rights case filed pursuant to 42 U.S.C. § 1983, 42 U. S. C. § 1985 and 42 U. S. C. § 1988.  This Court has jurisdiction pursuant to 28 U. S. C. §§ 1331 and 1343(3).  Pending are Defendant Wood County Sheriff's Department's (Defendant Sheriff) Motion for Summary Judgment and Supplemental Motion for Summary Judgment (Docket Nos. 21 & 27), Plaintiffs' Response (Docket No. 26) and Defendant Sheriff's Reply (Docket No. 26).  For the reasons that follow, Defendants' Motion for Summary Judgment is granted.

### 1.  THE PARTIES

Plaintiffs David A. Warner and Plaintiff Alice Warner are married.  They reside in Bowling Green, Wood County, Ohio (Docket No. 1, ¶ 2).

Defendant Sheriff is a political subdivision as that term is defined under OHIO REV. CODE § 27544.01(F).

Defendant Mark Wasylyshyn is the duly elected sheriff in Wood County, Ohio and the chief law enforcement officer in the county (Docket No. 1, ¶ 5).  He is sued in his official capacity.

Defendant Jeremy L. Holland is Defendant Sheriff's employee (Docket No. 1, ¶ 5).  He is sued in

his official and individual capacities (Docket No. 1).

## 2. **FACTUAL BACKGROUND**

On August 1, 2006, Plaintiff Alice Warner was at her residence in Wood County, Ohio, when her ex-daughter in law, Julie A. Warner, arrived at her home to enforce a custody order against Plaintiffs' son, Allen Warner (Docket No. 21, Exhibit 4, pp. 19-20).  Plaintiff Alice Warner informed Julie Warner that her grandchildren were not at home but were swimming with her son's girlfriend at another location, and she would call Julie Warner when the children returned (Docket No.1, ¶ 10).  Plaintiff Alice Warner called 9-1-1 to remove Julie Warner from her property and Defendant Holland responded to the call (Docket No. 1, ¶ 10, Docket No. 21, ¶ 3).

Defendant Holland began a search of the Warner property and found Allen Warner in the barn. Allen Warner reiterated that the children were swimming at a quarry with his girlfriend (Docket No.1, ¶ 10). According to Plaintiff Alice Warner, Defendant Holland confronted Allen Warner about the custody of the children (Docket No. 21, Exhibit 4, p. 27/69).  To direct his attention back to the custody order, Plaintiff Alice Warner invited Defendant Holland to search the Warner home.  She and Defendant Holland proceeded to the porch (Docket No. 21, Exhibit 4, p. 29/69).

Plaintiff David Warner claimed that as he was approaching his property he saw the sheriff's vehicle. He pulled into the driveway at an extraordinary high speed (Docket No. 21, Exhibit 14, pp. 14-15; Docket No. 21, Exhibit 4, p. 24).  Concluding that there was no emergency, Plaintiff David Warner insisted that Julie Warner vacate the Warner property (Docket No. 21, Exhibit 4, p. 25).  Plaintiff David Warner contends that once he stepped onto the porch, Defendant Holland proceeded to corner him, criticizing him for the manner in which he drove his car into the driveway and obstructing his entry into the house (Docket No. 21, Exhibit 4, p. 26; Docket No. 21, Exhibit 14, p. 19/33 ).  Defendant Holland threatened to arrest Plaintiff

David Warner for resisting arrest (Docket No. 21, Exhibit 14, pp. 20-21).

Plaintiff Alice Warner claimed that Defendant Holland accidentally "pepper sprayed" himself in the course of subduing Plaintiff David Warner (Docket No. 21, Exhibit 4, pp. 28-29). Defendant Holland swung his arms to diffuse the pepper spray and hit Plaintiff Alice Warner in the face. She fell, hitting her knee against the railing on a porch (Docket No.12, Exhibit 4, pp. 29/69, 32/69). Plaintiff Alice Warner called 9-1-1 and filed an oral complaint against Defendant Holland for assault (Docket No. 12, Exhibit 4, p. 31/69). She called the 9-1-1 dispatcher again when Defendant Holland allegedly hit and shoved her into the railing (Docket No. 21, Exhibit 4, p. 33). At the same time, another officer came to the porch and handcuffed Plaintiff David Warner (Docket No. 21, Exhibit 4, p. 33). Plaintiffs were transported to jail (Docket No. 21, Exhibit 4, pp. 35, 36).

Defendant Holland claimed that when Plaintiff David Warner arrived, he was angry. During a verbal altercation, Plaintiff David Warner allegedly spit in Defendant Holland's face. When Defendant Holland advised Plaintiff David Warner that he would arrest him for obstructing official business, Plaintiff David Warner clenched his fist and invited Defendant Holland to arrest him. Plaintiff David Warner shoved Defendant Holland, demanding that he vacate the Warner property. Defendant Holland arrested Plaintiff David Warner and attempted to call for reinforcement. In the meantime, Plaintiff Alice Warner called 9-1-1 and a deputy arrived. While assisting Defendant Holland in handcuffing Plaintiff David Warner, Plaintiff Alice Warner reached over the second officer's right shoulder, coming in close proximity to his holstered revolver and grabbing him on his back (Docket No. 21, Exhibit 5, Deposition Exhibit A, Docket No. 21, Exhibit 6, Deposition Exhibit B). The responding officer allegedly pushed Plaintiff Alice Warner back, she lost her balance and she hit her right knee. Plaintiff Alice Warner was also arrested for failure to comply with an order of a police officer (Docket No. 21, Exhibit 5, Deposition Exhibit A).

Plaintiffs were booked and detained in the Wood County Justice Center. During the course of the evening after their arrests, Plaintiff Alice Warner had a panic attack and her blood pressure was elevated (Docket No. 21, Exhibit 4, pp. 42, 43). She was deprived of her medication prescribed to treat anxiety (Docket No. 21, Exhibit 4, pp. 43-44). While being transported to jail, Plaintiff David Warner fainted (Docket No. 21, Exhibit 13, p. 41). Plaintiff David Warner was not given any medication after booking or prior to his release (Docket No. 21, Exhibit 13, p. 42, 47).

Plaintiffs were released on their own recognizance the following day (Docket No. 21, Exhibit 5, Deposition Exhibit A, p. 2/4, Docket No. 21, Exhibit 13, Deposition Exhibit H, p. 2/4). Ultimately Plaintiffs were charged with assault and obstructing official business (Docket No. 21, Exhibit 5, Deposition Exhibit A). Six months after the arrest on those charges, Plaintiffs filed a complaint against the Wood County Sheriff's Department, the Sheriff and Deputy Holland alleging a violation of intentional tort laws and the United States Constitution. Defendants contend that they are entitled to qualified immunity in their Motion and Supplemental Motion for Summary Judgment.

### 3. MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. *Nichols v. Moore,* 477 F.3d 396, 399 (6th Cir. 2007) (*citing* FED. R. CIV. P. 56(c)). A genuine issue for trial exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Brainard v. American Skandia Life Assurance Corporation*, 432 F.3d 655, 660 -661 (6th Cir. 2005) (*citing Anderson v. Liberty Lobby, Incorporated,* 106 S. Ct. 2505, 2512 (1986); *see Matsushita Electric Industrial Company, LTD., v. Zenith Radio Corporation,* 106 S. Ct. 1348, 1356 (1986) (noting that, in deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party). On summary judgment,

the district court is required to draw all reasonable inferences in favor of the nonmoving party. *Nichols*, *supra*, 477 F. 3d at 399 (*citing Anderson v. Liberty Lobby, Incorporated,* 106 S. Ct. 2505, 2513 (1986).

      The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003) (*citing Mt. Lebanon Personal Care Home, Incorporated v. Hoover Universal, Incorporated,* 276 F.3d 845, 848 (6th Cir. 2002)). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating "an absence of evidence to support the nonmoving party's case." *Id.* (*citing Celotex Corporation v. Catrett,* 106 S. Ct. 2548, 2553-2554 (1986)). If the moving party satisfies this initial burden, the non-moving party must then "set forth the specific facts showing that there is a genuine issue for trial." *Id.* (*citing* FED. R. CIV. P. 56(e)). That is, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. (*citing Celotex,* 106 S. Ct. at 2552).

## 4. DISCUSSION

      In their complaint, Plaintiffs assert five causes of action. First, they suffered serious bodily injuries as a result of Defendant Holland's physical abuse. Second, Defendant Holland unlawfully arrested and detained them. Third, they were denied their rights to (1) be advised of their civil rights, (2) be advised of the charges filed against them, (3) make a telephone call, (4) appear before the court for arraignment or bond hearing, and (5) obtain immediate medical treatment and/or dietary needs (Docket No. 1, ¶s 15, 16, 17). Fourth, Defendants failed to secure their property during their incarceration. Fifth, Defendants intentionally inflicted emotional distress and humiliated them.

      Defendants claim that they are entitled to qualified immunity from Plaintiffs' federal claims.

Defendants also seek summary judgment as a matter of law on Plaintiffs' state law claims pursuant to OHIO REV. CODE § 2744.02.

### A. Federal Claim Against Defendant Sheriff

Plaintiffs claim that Defendant Sheriff violated their rights, privileges or immunities guaranteed under the Fourteenth Amendment when it failed to access and/or provide proper medical care while Plaintiffs were detained in the Wood County Justice Center. Plaintiffs' claim is brought pursuant to 42 U. S. C. § 1983.

Inasmuch as Section 1983 does not create a substantive right, it provides a remedy for the violation of rights conferred by the constitution or other statutes. *Berger v. City of Mayfield Heights*, 265 F. 3d 399, 404 (6th Cir. 2001). The basic requirements of a Section 1983 claim include a showing that a person, acting under color of state law, deprived a plaintiff of a federal right. *Id.* at 405. The sheriff's department is not a "person" for purposes of Section 1983. *Brothers v. County of Summit,* 2007 WL 1567662, * 8, fn. 2 (N. D. Ohio 2007) (*citing Petty v. County of Franklin, Ohio,* 478 F.3d 341, 347 (6th Cir. 2007) (*citing Batchisk v. Summit County Sheriff's Department,* 1989 WL 26084 at *1 (Ohio Ct. App. Mar. 15, 1989) (sheriff, not sheriff's department was an entity capable of being sued)).

Applying the principles established in *Berger*, Plaintiffs' claim does not satisfy the requirements of the statute. Plaintiffs' case against Defendant Sheriff must be dismissed because Defendant Sheriff is not a proper legal entity and therefore is not subject to suit or liability under 42 U. S. C. § 1983.

### B. Federal Claims Against Defendant Sheriff Wasylyshyn

Plaintiffs suggest that Defendant Holland's conduct leading up to their arrest should be imputed to his employer. Defendant Wasylyshyn contends that he was not involved in the incident leading up to

Plaintiffs' arrest, the arrest itself or the conditions of detention.

Just as the sheriff's department cannot be held liable for the actions of its employees under Section 1983, the county sheriff cannot be held liable under a theory of *respondeat superior*. *Id.* In fact, liability for supervision exists under Section 1983 only when "the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it," or "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id*. (*citing Leary v. Daeschner*, 349 F. 3d 888, 903 (6th Cir. 2003) (*quoting Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984), *cert. denied,* 105 S. Ct. 156 (1984); and *see Jones v. Reynolds,* 438 F.3d 685, 689-90 (6th Cir. 2006); *Miller v. Calhoun County,* 408 F.3d 803, 817 n. 3 (6th Cir. 2005) ("Because § 1983 liability cannot be imposed under theory of *respondeat superior,* proof of personal involvement is required for the supervisor to incur personal liability.").

Plaintiffs have not alleged or argued that Defendant Wasylyshyn was a participant in the specific incidents leading up their arrest. Nor do they argue that Defendant Wasylyshyn encouraged the specific incidents, implicitly authorized, approved or knowingly acquiesced in the alleged unconstitutional conduct of Defendant Holland. Thus, summary judgment will be entered in Defendant Wasylyshyn's favor.

## **C.** **Federal claims against Defendant Holland**

Plaintiffs assert that the events surrounding the handcuffing of Plaintiff David Warner, striking and shoving of Plaintiff Alice Warner and sustained presence on the premises warrants denial of the Motion for Summary Judgment. They seek compensatory damages.

A request for monetary relief against a sheriff's deputy in his or her official capacity is deemed a suit against the state and is barred by the Eleventh Amendment. *Smeal ex rel. Smeal v. Alexander*, 2006 WL 3469637 * 8 (N. D. Ohio 2006). Accordingly the official capacity claims, if any, against Defendant

Holland are dismissed.

The federal claims remaining against Defendant Holland include the unreasonable use of force to handcuff Plaintiff David Warner, the unreasonable use of force against Defendant Alice Warner and exceeding the scope of his authority to search the Warner property. Defendant Holland asserts the defense of qualified immunity.

Section 1983 provides a mechanism for enforcing individual rights "secured" elsewhere, i.e. rights independently "secured by the Constitution and laws of the United States." *Brothers, supra,* 2007 WL 1567662 at * 8. In this case, Plaintiffs seek enforcement of rights guaranteed them by the Fourth Amendment. The Fourth Amendment secures the right of the people to be secure in their persons, houses and effects against unreasonable searches and seizures.

The qualified-immunity doctrine insulates government employees from civil trials and other litigation burdens against them, in their individual capacities, stemming from actions taken pursuant to their discretionary authority. *Harlow v. Fitzgerald*, 102 S. Ct. 2727, 2732 (1982). If the government official is granted qualified immunity, he or she is immune from suit over the asserted claim. *Haynes v. City of Circleville, Ohio,* 474 F.3d 357, 362 (6th Cir. 2007) (*citing Hoover v. Radabaugh,* 307 F.3d 460, 465 (6th Cir. 2002)).

The Sixth Circuit employs a two-step analysis in determining whether an official is entitled to qualified immunity. First a determination must be made as to whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated. Second, a determination must be made whether that right was clearly established. *Id.* (*citing Estate of Carter v. City of Detroit,* 408 F.3d 305, 310-11 (6th Cir. 2005) (*citing Saucier v. Katz,*121 S. Ct. 2151, 2156 (2001)). In addition, the Court occasionally utilizes a third step: "whether the plaintiff offered sufficient evidence to indicate that what the

official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Id.* (*citing Swiecicki v. Delgado*, 463 F.3d 489, 498 (6th Cir. 2006)). The three-step approach "may in some cases increase the clarity of the proper analysis." *Id.* "If, on the other hand, the case at issue is one of the many cases where, if the right is clearly established, the conduct at issue would also be objectively unreasonable, then this court has collapsed the second and third prongs in an effort to avoid duplicative analysis." *Id.* (brackets and quotation marks omitted).

The first prong of the qualified immunity analysis asks whether a constitutional violation has occurred under the Fourth Amendment Excessive Force provision. The Sixth Circuit Court of Appeals has recognized that right to be free from excessive force is a clearly established Fourth Amendment right. *Neague v. Cynkar,* 258 F.3d 504, 507 (6th Cir. 2001) (*citing Walton v. City of Southfield,* 995 F.2d 1331, 1342 (6th Cir. 1993)). As the district court recognized, such claims turn on whether the officer's actions were "objectively reasonable." *Id.* (*citing Walton*, 995 F. 2d at 1342; *Graham v. Connor,* 109 S. Ct. 1865, 1870-1871 (1989)). Moreover, a viable excessive force claim can be premised upon handcuffing. *Id.* (excessive force claim can be premised upon handcuffing if officer knew plaintiff had an injured arm and also knew plaintiff posed no threat); *see also Martin v. Heideman,* 106 F.3d 1308, 1312-13 (6th Cir. 1997) (overly tight application of handcuffs despite protestations of plaintiff can state excessive force claim); *Kostrzewa v. City of Troy,* 247 F.3d 633, 640-41 (6th Cir. 2001) (same).

In determining whether excessive force was used, courts must ask whether the officer's actions, in light of the totality of the circumstances, were objectively reasonable. *Id.* Because this is a test of objective reasonableness, the underlying motivations of the officer in making the arrest should not be examined. *Id.* Instead, the specific facts of each case are key. *Id.* The court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he

9

is actively resisting arrest or attempting to evade arrest by flight." *Id*. While courts must look to the totality of the circumstances in determining whether a seizure was reasonable, they must be sure to view those facts "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (*citing Kostrzewa*, 247 F. 3d at 639) (citations to *Graham v. Connor, supra*, omitted).

In this case, Plaintiffs can overcome a qualified immunity claim only if there is evidence that could establish a claim that the handcuffs were excessively tight and/or they were deprived of medical care during their arrest and detention. Plaintiff David Warner explained in his deposition that a deputy from Perrysburg and "the deputy" (referring to Defendant Holland), handcuffed him (Docket No. 21, Exhibit 13, 37). Defendant Holland concurs that "Officer Slusher" placed Plaintiff David Warner's right hand in handcuffs while he placed Plaintiff David Warner's left hand in the handcuffs (Docket No. 21, Exhibit 20, p. 38/44). Plaintiffs failed to show that the handcuffs placed on Plaintiff David Warner were overly tight, that he requested that they be loosened or that he had a temporary bruise or lasting injury resulting from the cuffs. In the absence of evidence that essential elements of a claim of excessive force caused by the use of excessively tight handcuffs cannot be made against Defendant Holland, Defendant Holland is entitled to qualified immunity on this claim.

Next, Plaintiffs contend that Plaintiff Alice Warner's fall and resulting injury were the result of excessive force used by Defendant Holland. Defendant Holland argues that he did not shove Plaintiff Alice Warner. The second law enforcement officer who arrived to help him shoved Plaintiff Alice Warner when he thought she was reaching for his gun.

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Martin v. Heideman,* 106 F. 3d 1308, 1313 (6th Cir. 1997). The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-

second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation. *May v. City of Springfield*, 492 F. Supp.2d 795, 799 -800 (S. D. Ohio 2005). A contrary conclusion would invite any third party who is unhappy about an arrest to resist that arrest, however mildly, hoping an officer would simply desist rather than chance violating that party's constitutional rights. *Dunigan v. Noble*, 390 F. 3d 486, 495 (6th Cir. 2004).

The non-moving parties, Plaintiffs, set forth the following specific facts showing that there is a genuine issue for trial as to whether Defendant Holland's use of excessive force resulted in the assault. All of the parties and witness, Allan Warner, recall the incident differently. They concur that Defendant Holland was attempting to exert some level of control over an admittedly hostile situation.

Plaintiff Alice Warner recalled that she was on the porch standing slightly more than an arm's length distance away from Defendant Holland. When Defendant Holland dispersed pepper spray into a windy atmosphere, he was affected by the fumes. While fighting the fumes, Defendant Holland hit Plaintiff Alice Warner in the cheek and she went down on one knee (Docket No. 21, Exhibit 4, p. 29/69).

Plaintiff David Warner claims that he did not witness Defendant Holland shove Plaintiff Alice Warner. He turned his back to the Deputy arresting him. He heard an unidentifiable noise behind him but he was unable to testify that it was Plaintiff Alice Warner falling on the deck. He did not hear Plaintiff Alice Warner complain of any injuries or proclaim that she had fallen (Docket No. 21, Exhibit 13, p. 38).

Allen Warner claims that he witnessed his mother being struck when she was in the cross-fire between Plaintiff David Warner and Defendant Holland. When Defendant Holland was attempting to grab Plaintiff David Warner, he shoved her to one side (Docket No. 21, Exhibit 19, pp. 26/42 & 28/42).

It is against this backdrop that the Magistrate finds that the identifying portions of the record

demonstrate an absence of a genuine dispute over material facts. Defendant Holland attempted to control a volatile chain of events in which he acted physically and actively to harness Plaintiff David Warner's anger. During the course of events leading up to Plaintiff David Warner's arrest, Plaintiff Alice Warner interceded and was shoved. She lost her balance and attempted to break her fall. In doing so, she sustained injuries. The force used was reasonable under the circumstances. Defendant Holland is entitled to immunity as to the excessive force claim.

Plaintiffs do not dispute that Defendant Holland was legitimately on the premises to execute a custody order. Defendant Holland was justified in entering the home because he had Plaintiff Alice Warner's permission to do so. Once Defendant Holland concluded that the children were not there, Plaintiffs contend that his business was concluded. However, Plaintiffs assert that he remained on the premises without permission or a warrant. Plaintiffs argue that such unlawful presence constituted a violation of the Fourth Amendment and bars entitlement to qualified immunity.

Consent to search is a question of fact to be determined by the totality of the circumstances. *United States v. Erwin*, 155 F. 3d 818, 822-823 (6th Cir. 1998) *cert. denied*, 119 S. Ct. 906 (1998). When law enforcement officers rely upon consent as the basis for a warrantless search, the scope of the consent given determines the permissible scope of the search." *United States v. Garrido-Santana,* 360 F.3d 565, 575 (6th Cir. 2004) *cert. denied,* 124 S. Ct. 2926 (2004) (*citing United States v. Gant,* 112 F.3d 239, 242 (6th Cir. 1997)).."The standard for measuring the scope of consent under the Fourth Amendment is that of objective reasonableness...." *Id.* at 575-576 (*citing Florida v. Jimeno,* 111 S. Ct. 1801, 1803 (1991)). The proper question is what would the typical reasonable person have understood by the exchange between the officer and the person giving consent. *Id.* Generally the expressed object of the search defines the scope of that search. *Id.* at 576 *(citing Florida,* 111 S. Ct. at 1804).

It is uncontroverted that Plaintiff Alice Warner gave Defendant Holland permission to search the Warner property for the children. She authorized a search of the Warner property for the children again when Plaintiff David Warner arrived (Docket No. 21, Exhibit 4, p. 25/69). Before he could complete a search of the house, Defendant Holland and Plaintiff David Warner engaged in a heated discussion about the propriety of Julie Warner's presence on his property (Docket No. 21, Exhibit, pp. 25-26). Since Defendant Holland did not complete his search for the children, the scope of consent to search the Warner premises was not exceeded.

### D.     STATE CLAIMS AGAINST DEFENDANT SHERIFF.

All of Plaintiffs' claims for civil rights violations implicate state tort claims. Defendants argue that they are entitled to summary judgment as none of these claims fall within the exception to those claims for which they are entitled to qualified immunity.

In Ohio, a presumption of qualified immunity is accorded official, governmental acts carried out by political subdivisions and their employees. *Van Hull v. Marriott Courtyard,* 87 F. Supp.2d 771, 775 (N. D. Ohio 2000) (*citing* OHIO REV. CODE § 2744.02; *See also Cook v. Cincinnati,* 103 Ohio App.3d 80, 90, 658 N.E.2d 814 (1995)). The sheriff's office is a political SUBDIVISION as that term is defined in OHIO REV. CODE § 2744.01(F). Provision of police services is a government function. OHIO REV. CODE § 2744.01(C)(2)(a) (Thomson Reuters/West 2008). Thus, the sheriff's department is immune from civil suit unless a plaintiff can prove that one or more of the exceptions at Section 2744.02(B)(1)-(5) apply.

   (1)    Injuries caused by the negligent operation of a motor vehicle;
   (2)    Injuries caused by the negligent performance of proprietary functions;
   (3)    Injuries caused by the failure to keep public roads, highways and streets open, in repair and free from nuisance;
   (4)    Injuries caused by negligence on the grounds of a building used for governmental purposes; or
   (5)    Injuries for which liability expressly is imposed by the Ohio Revised Code.

*Id.* at 775-776.

Defendant Sheriff is a political subdivision engaged in the provision of police services. Plaintiffs fail to allege the applicability of any exception, nor have they identified facts suggesting that Defendant Sheriff has otherwise lost its qualified immunity. Since Plaintiffs failed to satisfy the burden by offering anything to create a genuine issue of material fact, Defendant Sheriff is entitled to judgment as a matter of law on Plaintiffs' state law claims. Such claims must be dismissed.

### E. STATE CLAIMS AGAINST DEFENDANTS HOLLAND AND WASYLYSHYN IN THEIR OFFICIAL CAPACITIES

During all times relevant to their arrests, Plaintiffs argue that Defendants Holland and Wasylyshyn acted in concert to deprive them of rights, privileges and immunities guaranteed them of the laws and statutes of the State of Ohio. Defendants Holland and Wasylyshyn claim that they are entitled to immunity on all of Plaintiffs' state law claims.

Chapter 2744 of the OHIO REV. CODE provides that a suit against an employee of a political subdivision in the employee's official capacity constitutes a suit against the political subdivision. *Smeal, supra*, 2006WL 3469637 at * 9 (*citing Smitek v. Peaco*, 1993 WL 20995 * 1 (Ohio App. 9 Dist. Jan. 27, 1993)). OHIO REV. CODE § 2744.02(A)(1) sets forth a general grant of immunity for political subdivisions. *Id.* If none of the exceptions of OHIO REV. CODE § 2744.02(B)(1) applies, then the political subdivision is protected by the grant of immunity. *Id.* OHIO REV. CODE § 2744.02 (B)(1) provides:

> Subject to Sections 2744.03 and 2744 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
>
> (1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. The following are full defenses to that liability:

>	(a)	A member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct;
>
>	(b)	A member of a municipal corporation fire department or any other firefighting agency was operating a motor vehicle while engaged in duty at a fire, proceeding toward a place where a fire is in progress or is believed to be in progress, or answering any other emergency alarm and the operation of the vehicle did not constitute willful or wanton misconduct.

Plaintiffs have failed to allege an applicable exception. Defendants Holland and Wasylyshyn are therefore protected by the general grant of immunity from Plaintiffs' state law claims.

### F.  STATE CLAIMS AGAINST DEFENDANT HOLLAND IN HIS INDIVIDUAL CAPACITY

Plaintiffs claim that Defendant Holland physically abused them, unlawfully arrested and detained them, denied their civil rights, refused to secure their property and intentionally caused them to suffer emotional distress. Defendants contend that OHIO REV. CODE § 2744.03(A)(1) operates as a presumption of immunity. Plaintiffs have failed to overcome the presumption.

Under OHIO REV. CODE § 2744.03(A)(6) the sheriff and his deputies are immune from tort liability for acts occurring in the operation of the duties unless their conduct is outside the scope of their official responsibilities, undertaken with malicious purpose or bad faith, or is expressly imposed by them pursuant to another section of the Revised Code. *Smeal, supra,* 2006 WL 3469637 at *10. "Malice" is the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified. *Van Hull,* 87 F. Supp. 2d at 777 (*citing Cook,* 103 Ohio App.3d at 90, 658 N.E.2d 814) (*citing Jackson v. Butler County Board of Commissioners,* 76 Ohio App.3d 448, 602 N.E.2d 363 (1991)). "Bad faith" involves a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another. *Id.* Wanton misconduct is the failure to exercise any care whatsoever. *Id*. (*citing*

*Fabrey v. McDonald Police Department,* 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994) (*citing Hawkins v. Ivy,* 50 Ohio St.2d 114, 116-18, 363 N.E.2d 367 (1977)). "Mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor." *Id.* (*citing Roszman v. Sammett,* 26 Ohio St.2d 94, 96-97, 269 N.E.2d 420 (1971)). Such perversity must be under such conditions that the actor must be conscious that his conduct will, in all likelihood, result in an injury. *Id.*

There is no dispute that in enforcing the court order, effectuating Plaintiffs' arrest and subsequently charging Plaintiffs with criminal activity, the arresting officer, Defendant Holland, was engaged in a governmental function. Plaintiffs do not argue that Defendant Holland was involved in violation of their rights to the extent that a jury question arises if their acts were malicious, reckless, or in bad faith. In fact, Plaintiffs have presented little, if any, argument or evidence that would create a genuine issue of material fact as to Defendant Holland's Section 2744 immunity. Thus, Plaintiffs have failed to satisfy their burden and Defendant is entitled to summary judgment. Plaintiffs' state law claims–bodily injury, unlawful arrest and detention, failure to secure real and personal property and intentional infliction of emotional distress--against Defendant Holland must be dismissed.

## **CONCLUSION**

For the reasons set forth in this opinion, the Motion for Summary Judgment is granted and the case is dismissed against all Defendants.

So ordered.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date: 09/30/08